Thank you, Your Honors, and may it please the Court, I'd like to endeavor to save three minutes for rebuttal. Your Honors, Exxon removal petition identified three independent grounds for removal. Although the District Court rejected all three grounds, California has abandoned much of the District Court's reasoning, and the Supreme Court's Chevron decision has undermined much of what remains. Let me start with Admiralty jurisdiction, if I may, where California has prudently abandoned any reliance on the Savings to Suitors Clause. That means in concrete terms, as long as there's Admiralty jurisdiction, then there's a valid basis for removal. You don't need sort of two bases for removal. And so we're now talking then about whether there's Admiralty jurisdiction over a complaint that talks about marine issues 87 times in the complaint, and specifically in all of the first three counts of the complaint, seeks recovery for pollution to the navigable waters. What's the maritime activity, if we take that to be the test? That's at issue here. So the maritime activity, I think, is the navigation, the commercial fishing. And this is exactly what the complaint itself says is impaired by the defendant's conduct. And so I think if you look at paragraphs 390 and 391 of the complaint, which are at 6 ER 1074, California itself specifically alleged that there was interference with recreational and commercial fishing and navigation. So I think that puts us squarely in the realm of Admiralty jurisdiction. And I think if this were a case where it was oil pollution, I think it would be very straightforward to recognize that this is something where there would be Admiralty jurisdiction. But is it is the test? I guess I take our cases to look to whether the tortious conduct is the maritime activity, not simply the harms. Well, I mean, I, I think the test that derives from the Supreme Court's decision in the dredge dock case involving the flood in Chicago. I mean, I think it's a it's there's essentially a three part test. The first part is injury on the navigable waters. And I think we absolutely have that here. When you're alleging injury to the navigable waters, which essentially you do in a pollution case, that's satisfied. You change prepositions there. You went from injury on the navigable waters versus injury to the navigable waters. And that's exactly my question. Oh, well, I actually think the tort have to take place there. Well, the tort does take place there. So but but I actually think when you have a case that actually alleges injury to the waters, that is a clear example where the injury occurs on the waters as well. So I don't think I wasn't trying to be fast and loose. And this court has, like, you know, a couple of these decisions. But the one I might point to, which we cite in our reply brief is a case called Oppen against Aetna. And that was an oil pollution case. And this court found it pretty straightforward that there was interference with maritime activity and the injury was on the navigable waters. Now, that may be more obvious in a case where, like, the pollution is coming from a ship, Exxon Valdez, like those are the most obvious cases in the world. But I don't think there's anything in the case law or in the requirements about where the injury take place that says that the pollution has to emanate from. But under Groover, we have the second prong of the connection test, which is whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. And Groover looks at that in terms of the activity of the defendant. What is the activity of Exxon Mobil giving rise to the incident that shows a substantial relationship to traditional maritime activity? That would be polluting the navigable waters with plastic. And I think that is, you know, the there's this language about you got to look at it, the intermediate level of analysis. And I think that's exactly the right level of analysis. Has the courts traditionally treated pollution cases from land to water as admiralty cases? Because Illinois versus City of Milwaukee would have been an admiralty case and it isn't. Well, it could have been. I mean, it was a federal common law case as well, but it equally could have been. And the Sea Clambers case, which we cite in our briefs from the Third Circuit, did both. But the Third Circuit relied on some district court decision that had just sort of relatively made a new connection of land to water being covered by admiralty. That was there much precedent for that beyond that district court case in the Third Circuit? I mean, I don't know how much precedent there was, but there is precedent. We cited I don't know if it's the case the Third Circuit relied on. We also rely on the coal ash case from Southern District of New York, which was a drain that had an effect on the dredged waterways. And with respect, I mean, I think that this is a situation where it may seem at first blush a little odd. But I think that's because in the main in the context we probably care most about, which is oil pollution, it's been the field has been occupied effectively by statute. So all these cases are in federal court under 1331. But in the absence of the Oil Pollution Act, where the pollution emanates from, you know, really doesn't matter for purposes of admiralty jurisdiction. And I think you get that from this court's Tagadome case as well, which stands for the proposition that what matters is where the injury takes place, not whether the defendant's conduct takes place on land or on water. And that case, if you'll remember, is a situation where there was the kayakers were injured in the water. And the allegations were the Coast Guard was completely negligent on land in not sending anybody out to conduct a rescue. And the judge of Scanlon writing for the court, I don't think could have been any clearer in saying what matters is whether the injury occurs on the navigable waters. And then I think this is a case where I think it really, you know, is important to look at the complaint and look at what California is alleged here. So there's six counts in this complaint. If California had contented itself with the last three counts, counts four, five, and six, which are the misrepresentation, the consumer practices, the unfair competition, I don't know if I'd be here, but I wouldn't have a very good argument. But they included the first three counts. And the first three counts, the first is a public nuisance. And, you know, I think it's like worth focusing on specifically what California Civil Code 3479 requires, a public nuisance. It defines, first it defines nuisance as something that is injurious to health. So it's where the injury takes place. And the injury that's alleged here is the pollution in the navigable waters. And then it continues, and I think makes it even more obvious that this is an injury on the navigable waters. It says, obstructs the free passage or use in the customary matter of any navigable lake or river, bay, stream, or basin. So you clearly, in the first count on the public nuisance, they are clearly alleging the nuisance is the interference with the navigable waterways. The second count is a statutory count, but it's a count that goes to pollution of natural resources, which certainly includes the navigable waterways. And then the third count is a statutory water pollution claim. So, I mean, I think in terms of the injury, I'm not sure that given the way they've pled this complaint, that it could be much clearer that the injury occurs on the navigable waterways to the navigable waterways. The only prover is that under this second prong of the connection test, we look not at the specific conduct of the defendant that gives rise to liability, which they say is the false statements, et cetera, but the conduct for which you're being sought to be held liable under that count, which is the pollution, which is actually done by other persons. But you're not actually releasing the materials into the navigable waters. Well, keep in mind, my friends eventually have to prove proximate cause here on these theories, including their water pollution theory. So the way they plead it is that our conduct has caused the pollution to flow into the navigable waters. Now, I think when we get to the merits, we're going to have a field day saying, where's the proximate cause? That doesn't get it done. But for these purposes, I think we have to come here on the theory that they're proving that we proximately caused water pollution, a public nuisance on the navigable waterways, and we proximately caused water pollution for that third count, the statutory count. So I don't think we can't lose our right to adjudicate in federal court, because they've alleged something that seems kind of extravagant in terms of whether they'll ultimately be able to prove proximate cause. That may be a good segue to the federal officer question. And just how tenuous is tenuous enough? When do we get to the butterfly flapping its wings? I take it, setting aside the claims in terms of the scope of the complaint, the state was careful to frame the claims so that they were after the Exxon's federally contracted activity. Why doesn't that make it harder for you? Well, I don't think it ultimately does. But again, here, I think it's important to sort of focus on what they actually alleged in the complaint, because if they had, again, contented themselves with the third, fourth, I'm sorry, the fourth, fifth, and sixth counts, which really just go to the misrepresentations, I think this might be closer to the D.C. Circuit cases that are cited in the Chevron case as being an example of what's too attenuated. But because of these pollution claims, they really are essentially have to allege two things. They have to allege the production of plastics and the misrepresentations about recycling. And I think the district court, in rejecting our basis for removal here, sort of said, well, these are just misrepresentation claims. But then, as we point out in our reply brief, by the time the district court actually looked at the motion to dismiss in the parallel case involving the NGOs, which is in federal district court, he recognized that it wasn't just misrepresentations. It was the conjunction of the plastic production. Well, why isn't the production, at least the relevant production for purposes of the federal officer statute, almost definitionally remote? I mean, it's remote in time. Yes, it may be a but-for cause that some plastics that were produced under this contract have found their way to California. But isn't that exactly the limiting principle that Chevron attempts to begin to establish? I don't think so, Your Honor. And I mean, I'm willing to sort of stipulate that this is somewhere in between the climate change cases, which aren't good enough, and the land loss case that the Supreme Court had in Chevron. But I think it's worth recognizing that all nine justices in the Chevron case thought that was not a close case, that that was a very close connection. Indeed, Justice Jackson said even applying like a strong form of the causal nexus test, that would be enough. Now, you said like but-for causation, and that actually puts you in the world of kind of causal nexus. And we know the test now is less. I took the point in the footnote that, I mean, I think the scientific study the court sets in there is that the butterfly is but-for causation for the weather, just as a molecule coming out from the plant under a public contract in Louisiana may be but-for causation for something that's going on over on in California. But, I mean, I guess what I would say is here, I think their theory is very much that it's the confluence of the overproduction of plastic and the misrepresentations about recycling. And then when you get to the remedy, and I think it's fair to look at the whole complaint in deciding this related to, the remedy is to abate the public nuisance that's been caused by the confluence of that. And I don't think my friends, I have no idea what they're going to say when they come up here, but I don't think they're going to say that the abatement remedy here would somehow exempt plastics produced before 1955, which is the point at which these plants were sold by the federal government back to the oil companies, to Exxon's predecessors. So I think their position is going to be that the confluence of things, including later conduct, has created this public nuisance. You, Exxon, are going to have to abate the whole thing. And I don't think there is physically a way to only abate the post-1955 stuff. And I do think it's telling, and I want to save time for rebuttal, but I do think it's telling that one of the things the district court relied on a lot was that the activity under federal contract was synthetic rubber, and the complaint really focused on plastic. And he perceived a difference between plastic and synthetic rubber. And my friends don't want to embrace that, as far as I can tell, they've abandoned it. And I think it's with good reason, because they don't want the cleanup, they don't want the abatement limited to plastics. They want Exxon to clean up everything, and presumably including residual tire waste from tires that were produced under federal direction between 1942 and 1955. All right. Thank you, counsel. All right. We'll hear now from Ms. Moore. Good morning, Your Honors. Micah Moore for the California Attorney General. The Attorney General brought an enforcement action against ExxonMobil in state court raising state law claims and seeking relief on behalf of the state for harms caused by Exxon's conduct in connection with the promotion of plastics recycling. The district court correctly remanded that case to state court. Exxon asserts three grounds for subject matter jurisdiction, and each fails. First, there is no admiralty jurisdiction because the underlying litigation doesn't concern the traditional maritime issues that are the special concern of admiralty law. Second, there is no federal enclave jurisdiction because everyone agrees that the relevant conduct didn't arise on federal enclaves, and the complaint specifically disclaims seeking relief for injuries to federal land. Let's start with the admiralty point because, you know, counsel basically conceded that if you just had the false statement claims in four, five, and six, that he wouldn't have an argument. But you have asserted substantive pollution claims based on a derivative theory of liability rooted in the false statements. But the actual liability is for pollution. So why isn't the land to water pollution that is alleged there and sought to be remedied something that satisfies the elements of the admiralty jurisdiction test? I think two different points on that, Judge Collins. First, I think the space between the public nuisance and the pollution claims and the false advertising claims is simply not as great as Exxon would have it. I would point the court to paragraphs 450 to 453 of the complaint, which makes clear that the water pollution is connected to the deception. That's the theory of the complaint is that Exxon's misstatements about plastics recycling facilitated or permitted pollution to pass into the waters of California. And that's the basis. Correct. So you I mean, you have to if you're going to hold them liable for the pollution, you have to have some derivative theory of liability that's going to tag them for it. But the conduct for which they're being tagged is pollution. And so why isn't why doesn't the that act of land to water pollution satisfy the connection test? Because I think your honor. And that brings me to my second point. It's simply not the case that any claim that touches on water pollution in some way automatically gives a basis for admiralty jurisdiction. I think the cases cited by Exxon really bear that out. My friend on the other side mentioned the coal ash case. That wasn't a case about pollution in the abstract. That was a case where plaintiffs were arguing that sewage was impairing navigational rights that they held as vessel owners and riparian order owners. And so it wasn't it involved claims that sounded in admiralty to a greater degree than I think the claims at issue here, because deception is really the theory of the liability that, as you pointed out, is derivative to the pollution or that is the basis for the pollution. That there's no there's no reason for thinking that a court would require some special expertise in admiralty to evaluate that theory. Unlike the sorts of navigational claims that Exxon is relying on, a court would presumably ply ordinary state tort principles to that claim. The evidence submitted would result would relate to Exxon's representations as to plastic sustainability. Those are not the type of claims that have been understood to give rise to admiralty jurisdiction. I mean, what's your response to his argument that the Third Circuit and sea clamors did find admiralty jurisdiction in what was a land to water pollution cases? Supreme Court found the claim to be preempted and didn't address the issue of whether there was admiralty jurisdiction. Why? Why do you think it was wrong or distinguishable? I think it still had to do with maritime torts and injuries to fisheries, sewage and dredging operations, and sorts of factual questions that you might expect to recur in a maritime concept and a maritime context, even though what initiated the pollution began from land. But here we're just, I think we're a step even farther back from that, because the conduct here that's relevant to the pollution claim is misrepresentations in the commercial marketplace. And that's just the type of ordinary tort conduct that states deal with all the time. And that doesn't require it doesn't it doesn't trigger any sort of special admiralty rule. A court could adjudicate that claim without applying any sort of maritime principle to the claim. I know, but the court can adjudicate the pollution claims and the nuisance claims without deciding issues about the land to water pollution. I think it's possible that those questions might come up in a causation context. But again, the connection test requires these claims to have not just any relationship to maritime issues, but a substantial relationship. And I'd also point out, I think the water pollution is really a small sliver of this case. The complaint alleges harms to plastic pollutions, to public health, to land based environmental harms, to economic harm. So let's take your nuisance claim. I mean, one of the elements of nuisance is that unlawfully obstructs the free passage or use in the customary manner of any navigable lake, river, bay, stream. I'm sorry for public nuisance. I think we only have to show that the defendant caused or by action or inaction led to a condition that caused harm to a substantial number of people. We certainly could satisfy that by showing some sort of maritime specific injury. We could also show that by pointing to the other sorts of harms that I mentioned, which have nothing to do with harm to water. Well, I think with respect to several of these grounds, some of your best arguments are that you're in charge of your complaint and that you've pled around some of these questions. But I take your friend's view that with respect to these first three claims, you have an element there that has it right there in terms of obstructing navigable ways. You chose to plead that. The fishery harms, I'm not sure, helps you that it's just fishery harms, because I think that's that gets us closer to some of those those areas. And then you have kind of the remedial question, which also takes us into the water. I think to focus on the fishering harms, that is a reference in passing in a section of the complaint that is cataloging the many harms that arise for plastic pollution. I don't think there anyone I don't think it would be reasonable to review this complaint and come away with the impression that those would predominate the litigation or that there's even a substantial relationship to those to the rest of the complaint. And so it's not I think Exxon is really picking from isolated portions of a of a very comprehensive narrative to make this to be an admiralty case. Well, how about paragraph 424, which seems to land kind of squarely into these questions? That's the one that says that the nuisance that the state is complaining of is unlawful obstruction of the free passage of Navajo waterways. But even then, I think the district court acknowledged that that allegation has to be read in the context of the overall complaint. And what the complaint makes clear and spends extensive time discussing is that the theory of liability is that Exxon has represented its products to be sustainable when they're not. I think that is the theory that would the bulk of the evidence in the case would be devoted to. And at the end of the day, the state's case rests and lands on that theory. And so it's not the fact that there are some harm from water somewhere in the state's complaint is not enough to make this an admiralty case. But that's the activity that you're pleading in claim one, that that is the defendant's activity is obstructing Navajo waterways. Right. I guess I'm trying to figure out. I understand that in some areas where downstream, the harm elsewhere might do this. But even with respect to our own test, that strikes me as an activity that implicates admiralty. You still have to step back and look at the general character of the activity, giving rise to the claims. And so it's not that obstruction was occurred because of the defendant's use of marine instrumentalities or vessels or anything like that. It's about advertising. It's about public statements about sustainability of recycling, including in newspapers in California. And there's just not sufficient. That is not that kind of conduct has never been understood. I mean, is that defining it contrary to Groover at too high a level of generality? Because it's not just it's lies about the product. It's lies about pollutants. I mean, you're basically characterizing this as a pollutant. They lied about the pollutant in ways that caused people to then use it in ways that caused the pollution that you then want to remedy. I don't I think that is a too. General characterization of our claims. It's not that it's specific methods of recycling plastics where Exxon represented that this would this would be suitable for large range of single use plastic products. And they're not. And there's just nothing. There's no special admiralty rule that applies to that type of claim. Well, but so take the Tagaomi case, the Hawaii case. Again, that was a claim about a failure of communication on land between two emergency departments. That's that's not admiralty either. But even then, I think Tagaomi, I think, is a good example. You might have something like a negligence tort that has to do with a Coast Guard. And the recurring maritime factual question is that you're going to make a court in adjudicating that claim is going to reach conclusions that bear on the Coast Guard's ability to carry out rescue operations. And there's nothing. I am hard pressed to find something that a court would have to decide in the course of adjudicating this claim that will arise in another maritime context. Maybe, I guess, going to the federal officer question, why doesn't Chevron control here again? We've got a line drawing problem. What is going to be too attenuated here? But you can't you can't disclaim the way you disclaim the federal enclave, the plastics that were made under government contract and polluted California and the plastics that weren't made under government contract and polluted California. I think to the extent that Exxon believes that it can point to plastics pollution that's unconnected to deception, then that might be an argument that they could present at the remedies phase that would bear on the scope of relief. But it doesn't show that those contracts had anything to do with the deceptive statements that are the focus of the complaint. Well, on this issue, I detected a difference between what I took to be your argument in the papers below and in this court, because in your papers below, you had some fairly definitive statements that, you know, this case has nothing to do with synthetic rubber. The complaint does not take issue with the millions of tons of wartime synthetic rubber, but rather takes exception with single use plastic. But I didn't see that argument in your red brief. You seem to now be wanting to keep in reserve the argument that the rubber might count as a plastic and therefore maybe you'll get a remedy with respect to that. So I'm going to offer you the opportunity to clarify. Are you changing your position from where you were? And did you do you agree that this has nothing to do with synthetic rubber? I agree that rubber as a product is I don't think that that is categorically out of the case because rubber is a significant source of microplastics pollution. And to the extent the state can show that Exxon's deceptive statements facilitated rubber pollution, that might well be a question that's litigated further in the case. So that's not what you argue in the quotes that I just read. Well, I don't the reason why I don't understand there to be any discrepancy is because as to the synthetic rubber that's under the wartime contracts, that production occurred decades before the earliest allegations of recyclability that are an issue in the complaint. And so it's not that the fact that some rubber somewhere may at some point be relevant to the state's claims does not mean there's a nexus between the synthetic rubber manufacturing that Exxon was doing at the behest of the federal government years before it made any of the representations about recyclability that are relevant to this lawsuit. And so the idea is, is that the recyclability deception is is linked to the 1960s and beyond production in a way that it's not linked to the wartime production. I think Exxon's earliest misrepresentations about recyclability, as alleged in the complaint, occurred years after the synthetic rubber manufacturing contracts. And again, our case is just not about production of any product in the abstract. The theory is that Exxon made misrepresentations as to the recyclability that then facilitated the pollution that gave rise to the clause that facilitated. I mean, just to help me out, how close this nexus is, that they were producing plastics in somehow reliance or somehow dependent on the fact that we could sell these if we're able to deceive the public with respect to its recyclability. I think it's more that the representations that plastic was sustainable when it was not led consumers to purchase single use plastics in quantities that they would not have had they known. And at Exxon, there are allegations in the complaint as well that Exxon intentionally concealed studies showing that techniques such as mechanical advanced recycling were not as effective as Exxon had represented them to be. If there are no further questions, we would ask the court to affirm the district court's remand order. All right. Thank you, counsel. We'll hear rebuttal. Thank you, Your Honor. Just a few points in rebuttal. My friend started her argument by saying that there are no special concerns of admiralty that are implicated here. But, of course, two classic special concerns of admiralty are commercial fishing and navigation, and those are alleged as being interfered with right in their complaint. And if you imagine that the complaint, at least those first three counts, were brought by commercial fishermen instead of by the state in its enforcement capacity, I think it would be obvious that this would be an admiralty or a maritime case. And the government in its enforcement capacity is essentially stepping into those shoes. And it is the master of its complaint, as you alluded to. And if you look at paragraphs 390 and 91 and paragraph 424 of their complaint, they are clearly alleging essentially obstructions to navigation, which is classic admiralty. Now, my friend suggests that's only a small sliver of their complaint. I don't think that's true factually, and I don't think it matters legally. Factually, they use the word marine 87 times in their complaint. They allege as part of their allegations, and it's a long complaint, but they allege that 85 percent of all water pollution is from plastics. So they've made this very much a water pollution case on the navigable waterways. But legally it still doesn't matter because if there's any count, any aspect of this claim that belongs in federal court, then the whole case comes along into federal court. And we've made that point throughout our briefing, and the states never responded. And just to finish briefly on the federal officer issue, as to that, you know, one of the answers we heard was, well, if there's some argument about causation that some of this rubber, synthetic rubber plastic isn't related to government production or isn't related to the misstatements, that's just a causation question. But that's a causation question that belongs in federal court. I mean, surely there's going to be a debate about what's the scope of any federal defense we have here, but we're entitled to a federal forum for that defense. And just to sort of finish with one thought, whatever else is true about the way they frame this, part of their complaint is the remedy. And I just don't understand how they're going to have a remedy, especially an abatement remedy, that doesn't implicate the production. And, you know, we loosely talked about the World War II production, but this production actually goes through the Korean War. And Judge Rosenthal's opinion for the Southern District of Texas kind of goes through the kind of careful control of the facilities that produce the synthetic rubber that weren't transferred to private hands until like 1955. Thank you, Your Honors. All right. Thank you, Counsel. The case just argued will be submitted and the court will stand in recess for the day.
judges: COLLINS, JOHNSTONE, ALBA